## Boyce, Appellant, *v.* United States Steel Corporation.

Argued March 18, 1971. Before BELL, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Paul A. Simmons*, with him *Tempest & Simmons*, for appellant.

*Stephen D. Marriner*, with him *James D. Strader*, and *McCreight, Marriner & McCreight*, for appellee.

OPINION BY MR. JUSTICE BARBIERI, December 29, 1971:

This is an appeal from the grant of the defendant-appellee's motion for summary judgment in a trespass action pursuant to Rule 1035 of the Pennsylvania Rules of Civil Procedure. Appellant filed exceptions to the opinion and order of the lower court which were dismissed and final judgment was entered. It is from this order that appellant has appealed.

The appellant was employed by Clairton Slag, Inc. (Michael M. Schaefer, owner), and on the night of November 12, 1967, hauled a load of slag from the plant of the United States Steel Corporation (Steel) in Clairton, Pennsylvania, to a dump, owned by Steel, called the Peters Creek Storage Area. He had proceeded to the point of raising the bed of his truck to dump the slag when some mechanical defect caused the truck dumping operation to fail and the truck bed not to completely rise. He tried to raise it a few times, but it still failed. The appellant, investigating the reason for the malfunction, placed his arm between the truck bed and the frame of the truck and the truck bed fell,

pinning his right arm. This accident occurred at 10:27 P.M. on November 12, and he remained pinned by the truck bed until approximately 6:30 A.M. the following morning when he was discovered and freed by a fellow employe from Clairton Slag, Inc. As a result of the injuries sustained, appellant's right arm was amputated.

Appellant's cause of action is based on the theory that his injuries were aggravated by the appellee's negligence in failing to: (1) have the dump properly illuminated; (2) properly patrol the dump; (3) check on appellant's whereabouts when they knew or should have known that he had not returned for almost eight (8) hours; and (4) discover the perilous plight of appellant.

Appellant alleged in his complaint and testified in his deposition that on several unspecified occasions prior to the night in question he had seen a black car with Steel markings patrolling the dump. He further testified that the men driving the car were wearing the uniforms of Steel mill guards and that he had spoken to these men on occasion and told them how he relied on them to protect him, and that he was glad they were patrolling for his safety.[1] Further, he said that when he left the mill with a load of slag to dump, if he did not tell the guard that this was his last load for the night, the guard knew that he would be returning shortly to pick up another truck load. He also testified that he usually entered and left the mill by either of two of the four gates to the mill and that he had

---

[1] Paragraph 6 of Appellant's Complaint provides: "Plaintiff at all times relied on the employees of the defendant to patrol said dumping ground and but for said reliance the plaintiff would not have driven said truck out on said dump at the request of and in furtherance of the business of said defendant."

not told the mill guard that he was proceeding on his last trip of the evening.[2]

Appellee, in its answer, denied that the dump was regularly patrolled as alleged, stating that it was only patrolled sporadically "for the purpose of prohibiting trespassers from using the area, but that maintenance and surveillance of the area for the purpose of the plaintiff and the dumping operations were undertaken and required of Michael M. Schaefer, employer of the plaintiff at the time of said accident, and that said Michael M. Schaefer was responsible for the protection, safety and supervision of the operation in which plaintiff was engaged."

Obviously, no negligence claim can be based upon a state of facts on which the law does not impose a duty upon the defendant in favor of the plaintiff. See *Yania v. Bigan*, 397 Pa. 316, 155 A. 2d 343 (1959); *Neyman v. Soutter*, 205 Pa. Superior Ct. 8, 205 A. 2d 685 (1964). In his quest for such a duty, the appellant relies upon Section 323 of the Restatement 2d, Torts, which reads: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking."

---

[2] This optional gate situation seems to answer and refute appellant's allegation that appellee should have checked on his whereabouts when he did not return to the mill for eight hours, as he could have returned and left again from another gate and there is no averment as to how the last guard who actually saw him would know what another guard allegedly knew.

Our study of the record in this case in the light of familiar negligence principles convinces us that appellant's reliance upon this section of the Restatement is misplaced. The section does not create a duty but simply spells out one that exists. The provisions are concerned with *"One who undertakes . . . to render services to another . . . ."* Here, we not only have no undertaking by defendant to look out for the safety and welfare of the appellant, but have, quite the reverse situation, an agreement between appellant's employer and the appellee whereby it is stipulated that the duty and undertaking sought to be imposed upon appellee would be assumed solely by appellant's employer, thus freeing appellee of any responsibility therefor. In an answer to one of appellant's interrogatories the appellee attached a letter contract from Clairton Slag, Inc. which contained, in part, the following: "The maintenance of the dumping area and access roads to the dumping area will be our (Michael M. Schaefer) responsibility."

The lower court stated: "The Complaint does not include any allegation that defendant was required or owed an obligation or duty to plaintiff upon which he had a right to rely. He alleges acts of negligence but fails to allege the duty which caused these acts to be a breach of any obligation or duty." The trial court thus, as we do, concluded that the letter contract negated any suggested undertaking or duty of the kind that the plaintiff claims existed.

Aside from the letter agreement, however, and assuming that appellant has shown that U. S. Steel patrolled the area and that he relied on their so patrolling, he has in no way shown that they undertook such activity for his protection. He testified to seeing a patrol car on occasion and to occasionally speaking with the guards. Steel asserted that patrols were made sporadi-

cally, and not regularly, in order to protect against trespassing. Under the circumstances of this case it can hardly be said that Steel undertook to protect the appellant from the consequences of his own negligence, such a circumstance not being at all foreseeable. Comment a to Section 323 of the Restatement states: "This Section applies to any undertaking to render services to another *which the defendant should recognize* as necessary for the protection of the other's person or things." (Emphasis added)

It follows that Section 323 cannot be invoked to provide a duty or undertaking which does not exist, nor can a duty be otherwise imposed upon this defendant to be responsible for appellant by appellant's action alone in telling defendant's employe that he relied on that employe to look out for him. Even appellant must concede that he is asking the defendant to be responsible for injuries which, whether or not aggravated by the inattentiveness of others, were actually and solely caused by his own acts. We find no basis legally or factually upon which the appellant's claim in this case may be supported.[3]

Since we are fully in accord with the lower court's ruling that no duty can be raised on the basis of appellant's allegations and contentions, we need not consider the medical causation question considered below, or the statutory employer question noted by the lower court.[4]

Order affirmed.

---

[3] See *Evans v. Liberty Mutual Insurance Company*, 398 F. 2d 665, 667 (3d Cir. 1968), citing *DeJesus v. Liberty Mutual Insurance Company*, 423 Pa. 198, 201, 223 A. 2d 849, 850 (1966); *Brown v. Travelers Ins. Co.*, 434 Pa. 507, 254 A. 2d 27 (1969); *Peatross v. Southwark Minit-Man Corp.*, 415 Pa. 129, 132, 202 A. 2d 102 (1964).

[4] Neither party raises this issue and therefore it was not considered.

Mr. Justice POMEROY concurred in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.

————

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent because the entry of summary judgment is not an appropriate disposition of this controversy. A review of the record reveals "genuine issues" as to "material facts" which require adjudication thereby precluding the entry of judgment as a matter of law. See *Linwood Harvestore, Inc. v. Cannon,* 427 Pa. 434, 235 A. 2d 377 (1967). I would vacate the entry of judgment and let the case proceed on the merits.

Mr. Justice O'BRIEN joins in this dissent.