538 A.2d 111

Joseph P. Moore, III, Appellant *v.* Commonwealth of Pennsylvania, Department of Justice, now Office of General Counsel, Appellee.

Joseph P. Moore, III, Appellant *v.* Lawrence Reid, Francis Dillman and Counselor Zelles, Appellees.

Joseph P. Moore, III, Appellant *v.* Julius T. Cuyler, Appellee.

Argued September 16, 1987, before President Judge Crumlish, Jr., and Judges Craig, MacPhail, Colins and Palladino.

*Stephen M. Feldman,* with him, *Gary Lee,* for appellant.

*Gregory R. Neuhauser,* Senior Deputy Attorney General, with him, *John G. Knorr, III,* Senior Deputy Attorney General, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for appellees.

Opinion by President Judge Crumlish, Jr., February 25, 1988:

Joseph Moore appeals a Philadelphia County Common Pleas Court order granting the defendants Com-

monwealth, Cuyler, Reid, Dillman and Zelles' motion for summary judgment.

Moore was shot five times by Andre Huett following Huett's release on a home furlough from the State Correctional Institution at Graterford (SCIG).

Previously, Moore had been an eyewitness to an armed robbery committed by Huett and was prepared to testify as a prosecution witness. Huett pleaded guilty to the crime and was incarcerated at SCIG. Huett had served ten months of his sentence when Cuyler, the Superintendent of SCIG, Reid, the Director of Treatment at SCIG, and Dillman and Zelles, correctional counselors, voted to approve Huett's application for a two-day home furlough. When Huett failed to return from the furlough, SCIG officials reported him to state and local authorities as an escapee. One month later Huett shot Moore, causing Moore to suffer paraplegia and loss of hearing.

Moore's complaints against the Commonwealth and the individual defendants[1] allege essentially that the defendants engaged in willful misconduct and were otherwise negligent in approving the furlough and in failing to properly diagnose, treat or recognize Huett's psychiatric condition.

The common pleas court concluded that the Commonwealth was entitled to sovereign immunity under

---

[1] Moore filed three separate complaints in trespass against (a) the Commonwealth, (b) Superintendent Cuyler, and (c) Director of Treatment Reid and counselors Dillman and Zelles. The common pleas court's orders entering judgment in favor of the defendants in the latter two complaints were originally appealed to the Superior Court of Pennsylvania, which transferred the matters to this Court. Orders of November 4, 1985 at No. 2368 Phila. 1985 and November 1, 1985 at No. 2367 Phila. 1985 (Pa. Superior Court). All three appeals were consolidated for argument in this Court.

Act 152[2] and that Cuyler was entitled to official immunity. *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978). As to Reid, Dillman and Zelles, who waived official immunity by not raising it in an answer, Pa. R.C.P. Nos. 1030, 1032, the common pleas court concluded that they had no common law duty to protect Moore from Huett's actions. Accordingly, the common pleas court entered summary judgment in favor of the defendants.

This Court can sustain a grant of summary judgment only if the pleadings and discovery material show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Muncy Area School District v. Gardner,* 91 Pa. Commonwealth Ct. 406, 497 A.2d 683 (1985).

## COMPLAINT AGAINST THE COMMONWEALTH

Initially, we must reject Moore's contention that the allegations against the Commonwealth fall within Act 152's statutory waiver of immunity for medical-professional liability.[3] The Pennsylvania Supreme Court has recently declared that the General Assembly has not

---

[2] Act of September 28, 1978, P.L. 788, repealed by the Act of October 5, 1980, P.L. 693, and replaced by the Act of October 5, 1980, P.L. 693, *as amended,* 42 Pa. C. S. §§8521—8528. Although the 1980 Act is not significantly different from Act 152 for our purposes, Act 152 controls this case since it was effective at the time Moore's cause of action accrued.

[3] Section 5110(a)(2) of Act 152 provided an exception to immunity as follows:

(2) *Medical-professional liability.*—Damages caused by Commonwealth health care employees of medical facilities or institutions or by a doctor, dentist, nurse and related health care personnel.

This provision has subsequently been replaced without significant change by 42 Pa. C. S. §8522(b)(2).

waived the immunity of the "Commonwealth or its local agencies" for harm caused by third persons "in *any* of the eight [immunity] exceptions." *Chevalier v. City of Philadelphia,* 516 Pa. 316, 319, 532 A.2d 411, 413 (1987), citing *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987) (emphasis in original). *See also Johnson v. SEPTA,* 516 Pa. 312, 532 A.2d 409 (1987). Although these cases addressed the governmental immunity of local agencies,[4] the reasoning of these decisions mandates the same conclusion with respect to the Commonwealth under Act 152. We must follow *Mascaro's* instruction that *exceptions* to an absolute rule of immunity are to be narrowly interpreted. *Mascaro,* 514 Pa. at 361, 523 A.2d at 1123.

In *Mascaro,* the Court strictly construed the governmental immunity act and concluded that its express statutory language does not waive immunity for damages caused by the acts of *others. Mascaro,* 514 Pa. at 362, 523 A.2d at 1124. It further noted that this legislative judgment, as evidenced by the language of the statute, is consistent with the general rule that criminal and negligent acts of third parties are superseding causes which absolve the defendant from liability for the harm caused by such third parties. *Id.* This reasoning is applicable to the medical-professional liability immunity exception in Section 5110(a)(2) of Act 152, which waives immunity only for *"[d]amages caused by Commonwealth* health care employees . . . or by a doctor, dentist, nurse and related health care personnel." (Emphasis added.) Since Moore's injuries were caused by criminal acts of a third party, Huett, the Commonwealth is "insulated from *all* liability for the harm caused by such a party." *Chevalier,* 516 Pa. at 319, 532 A.2d at 413 (emphasis in original).[5]

---

[4] 42 Pa. C. S. §§8541—8542.

[5] Since we have concluded that Act 152's medical-professional liability exception does not permit Moore's cause of action against

In *Allentown State Hospital v. Gill,* 88 Pa. Common-
wealth Ct. 331, 488 A.2d 1211 (1985), decided before
*Mascaro,* we affirmed the common pleas court's denial
of the Commonwealth defendants' motion for judgment
on the pleadings where the complaint alleged that a
state mental hospital and its doctors negligently re-
leased and supervised a mental patient who assaulted
the plaintiff. There, we held that the plaintiff's case fell
within the immunity exception for medical professional
liability. However, that case is distinguishable because
the mental patient's harmful acts could not be regarded
as having *superseded* the hospital's *own* original negli-
gence in releasing the mental patient. A cause is not
considered superseding when it is a foreseeable or nor-
mal incident of the risk created by the original actor's
negligence. *Vattimo v. Lower Bucks Hospital, Inc.,* 502
Pa. 241, 465 A.2d 1231 (1983); Restatement (Second) of
Torts §448 (1965). In a psychotherapeutic hospital set-
ting, a patient's mental instability and the coinciding
risks associated with such instability are obviously rec-
ognized by virtue of the patient's admittance. A mental
hospital is specifically staffed with psychiatric and medi-
cal professionals and has specialized facilities which en-
able it to foresee the risk of a negligently released men-
tal patient harming another. Therefore, the patient's act
in *Gill* cannot have been said to be so unforeseeable as
to have been a *superseding* cause; rather, it was a mere
*intervening* cause which did not break the chain of cau-

---

the Commonwealth, we need not address his contentions that dam-
ages were caused by Commonwealth employees and that such dam-
ages would be recoverable against the Commonwealth at common
law, both of which are prerequisites to finding an immunity waiver
under Act 152.

Also, inasmuch as Act 152 contains no special immunity waiver
for alleged willful misconduct by the Commonwealth, such allega-
tions do not create a basis for recovery against the Commonwealth.

sation to absolve the original actors from liability. *Vattimo,* 502 Pa. at 253, 465 A.2d at 1237.

A state prison furlough of an inmate pursuant to a statutorily authorized program is not comparable to a state hospital's release of a diagnosed mental patient. A prison does not have the expertise and facilities which would enable it to foresee that a furloughed inmate's *psychiatric deficiencies* could cause him to harm another. This being so, the furloughed inmate's acts in this case were not foreseeable nor could they have been incidents normally considered by the prison authorities. For these reasons, *Gill* is not controlling.

### Complaint Against Superintendent Cuyler

Likewise, we conclude that Superintendent Cuyler is entitled to immunity. Section 2310 of Act 152, 1 Pa. C. S. §2310, provides:

> Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, *and its officials and employees acting within the scope of their duties,* shall continue to enjoy sovereign and official immunity *and remain immune from suit except as the General Assembly shall specifically waive the immunity.* When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth *and its officials and employees* shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42. . . .

The provisions of Title 42, specifically Section 5110(a) of Act 152, provided:

> Limited waiver of sovereign immunity
>
> (a) General rule.—The General Assembly, pursuant to section 11 of Article I of the Consti-

tution of Pennsylvania, does hereby waive, in the following instances only and only to the extent set forth in this section . . . sovereign immunity as a bar to an action against Commonwealth agencies, *and their officials and employees acting within the scope of their duties,* for damages arising out of a negligent act or omission where the damages would be recover- able under the common law or a statute creating a cause of action if caused by a person not having available the defense of sovereign immunity.[6]
(Emphasis added.)

We believe that these statutory provisions are clear and unambiguous in stating that the Commonwealth, *and its officials and employees,* enjoy the same statutory sovereign immunity. In other words, if the Commonwealth is entitled to sovereign immunity under Act 152, then its officials and employees acting within the scope of their duties are likewise immune. The fact that the General Assembly saw fit to statutorily retain the *common law* defense of official immunity in Section 5110(b) does not mean that it never intended to grant *statutory* sovereign immunity to officials and employees. Rather, the statutory retention of this common law defense means merely that an official may additionally assert common law official immunity in cases where the individual is precluded from asserting sovereign immunity under Section 5110(a). Although this Court's prior case law suggested that Act 152 did not affect official liability as it existed under the common law, *see Estate of Armstrong v. Pennsylvania Board of Probation and Parole,* 46 Pa. Commonwealth Ct. 33, 405 A.2d 1099 (1979), we can after diligent research find no case

---

[6] Act 152 then enumerated certain exceptions to this immunity. Sections 5110(a)(1) through (8).

wherein our Supreme court has expressly addressed this precise issue.[7] In the absence of contrary instruction from our Supreme Court, we cannot simply ignore clear and unambiguous statutory language. 1 Pa. C. S. §1921(B).

Superintendent Cuyler is a Commonwealth employee acting within the scope of his duties[8] for immunity purposes under Act 152. Since the Act precludes liability for the criminal acts of third parties, we hold that Cuyler is entitled to sovereign immunity under Act 152.[9]

---

[7] Our Supreme Court in *DuBree* set forth the standard for determining the immunity of officials. However, that decision was entered just one week after Act 152 became law and made no mention of the effect of Act 152.

[8] Plaintiff's Reply to New Matter of Defendant Julius T. Cuyler admitted that, at all times material to this case, Cuyler was a Commonwealth employee acting within the scope of his employment.

[9] Our decision renders it unnecessary for Cuyler to satisfy the common law defense of official immunity under the standards set forth in *DuBree*. Nonetheless, were we to reach that decision, we would agree with the common pleas court that Cuyler is immune under *DuBree*. Contrary to Moore's contentions, the record contains sufficient evidence revealing that Cuyler is a public official for immunity purposes. He had ultimate supervisory authority over all departments within SCIG. The record also reveals that Cuyler exercised decision-making authority over the approval or disapproval of an inmate's furlough release into the general public. Cuyler Deposition at 66, 88. Cuyler also exercised authority to determine the point at which a furloughed inmate is deemed to be an escapee. *Id.* at 73, 78.

In deciding whether an individual is officially immune under *DuBree*, the Court must examine whether the grant of such immunity would promote the public policy considerations related to ensuring unfettered decision making by public officials. This Court has recognized that furlough decisions are a matter of skilled administrative discretion dependent upon subjective examinations by prison staff members concerning an inmate's individual characteristics, problems and needs. *Reider v. Bureau of Corrections*, 93 Pa. Commonwealth Ct. 326, 502 A.2d 272 (1985). Such decisions are

COMPLAINT AGAINST DEFENDANTS REID; DILLMAN AND ZELLES

Moore cannot maintain the remaining tort claim against the individual defendants Reid, Dillman and Zelles unless the law imposes a duty upon these defendants to Moore. *Boyce v. United States Steel Corp.*, 446 Pa. 226, 285 A.2d 459 (1971). Thus, we must address the issue of whether these individual defendants owed Moore a duty of care when they treated Huett and when they decided to approve Huett's pre-release furlough. This is an issue of first impression in this Commonwealth.

Moore's complaint alleges that the defendants breached duties in approving Huett's furlough (a) when they knew, or should have known, that he failed to meet regulatory criteria and that he constituted a public danger; (b) without utilizing predictive scales or tests that would have disclosed Huett's dangerous propensities; and (c) without properly utilizing Huett's psychiatric records or seeking psychiatric re-evaluation. The complaint further alleges that the defendants failed to properly diagnose, treat or recognize Huett's alleged psychiatric disorders which rendered him dangerous.

Moore contends that the alleged duty exists by virtue of certain language contained in the preliminary provision of a Bureau of Correction Administrative Directive concerning pre-release furloughs. That directive

---

not easily measured against a predictable standard of care and the resulting possibility of litigation may tend to discourage an official from making clear choices in this context. *See DuBree,* 481 Pa. at 544, 393 A.2d at 295. Therefore, granting official immunity would be appropriate in this case. The mere fact that Moore's complaint alleged willful misconduct would not change our view since the consideration of such factors is implicitly included under the *DuBree* analysis. Furthermore, Moore admits that Cuyler acted within the scope of his duties.

reads, "[t]he Bureau of Correction is charged with protecting society through the control and rehabilitation of offenders." BC-ADM 805 (Rev. 1-77).[10]

This sweeping statement purportedly imposes a duty upon the *Bureau* in favor of the *public at large*. It does not impose a duty upon the *individual employees of the Bureau* to protect *specific individuals* such as Moore. Our Courts have been reluctant to impose a general duty of care upon government employees to specific persons where the alleged duty is simply the protection of the public at large—*i.e.*, society—from third-party criminal acts. In *Melendez v. City of Philadelphia*, 320 Pa. Superior Ct. 59, 466 A.2d 1060 (1983), the Superior Court addressed a police officer's duty to protect society and held that it does not create a specific duty to individuals.[11] *Melendez* carved out a very narrow exception for situations where a special relationship exists between the police and the crime victim. In such a case, a duty exists where a police officer knows of the potential for a particular harm to a specific person and assumes protection of that person from that harm. *Id.* at 65, 466 A.2d at 1065.

Our courts recognize that when assessing the duties of public servants who protect the public from criminals, we must be mindful that actions taken in this context actually affect the broad spectrum of society. Our brothers in the federal judiciary recognized this need in *Rieser v. District of Columbia*, 563 F.2d 462, 477 (D.C. Cir. 1977), where that Court spoke to the problems as-

---

[10] Substantially similar regulatory provisions concerning pre-release furloughs appear at 37 Pa. Code §§95.111—95.118.

[11] *See also Casey v. Geiger*, 346 Pa. Superior Ct. 279, 499 A.2d 606 (1985); *Morris v. Musser*, 83 Pa. Commonwealth Ct. 620, 478 A.2d 927 (1984); *Caldwell v. City of Philadelphia*, 358 Pa. Superior Ct. 406, 517 A.2d 1296 (1986) (cases following *Melendez*).

sociated with a theory which would impose a duty upon a parole officer:

> [B]ecause of the large number of persons who could be injured as a result of the defective provision of public services . . . [,] [g]overnmental units are sometimes held to owe no duty to members of the general public for injuries arising out of the negligent provision of services designed to benefit the community at large.

In order to impose a duty in *Rieser,* the Court required a special relationship between the defendant parole officer and the particular plaintiff by which the parole officer would necessarily have awareness of a specific and unreasonable risk to that plaintiff.

Other jurisdictions which impose a duty of care in the context of released or escaped inmates who subsequently harm others, do so where the prisoner possesses known dangerous propensities *and* where the release creates a foreseeable risk of injury to foreseeable victims of the inmate.[12]

We must also recognize that the pre-release furlough of inmates by Correction employees is legislatively authorized by Sections 1-4 of the Act of July 16, 1968, P.L. 351, *as amended,* 61 P.S. §§1051—1054 and, being so, such furloughs are deemed to benefit society and advance public policy. Our Supreme Court has written that "the concept of duty amounts to no more than 'the sum total of those considerations of policy which led the law to say that a particular plaintiff is entitled to protection.' " *Sinn v. Burd,* 486 Pa. 146, 164, 404 A.2d 672, 681 (1979) (quoting *Leong v. Takasaki,* 55

---

[12] Many of these cases rely on Sections 315 and 319 of the Restatement (Second) of Torts, which are discussed below. The case law of other jurisdictions addressing this and related issues is aptly summarized in 1, Speiser, The American Law of Torts, §4:11 (1983 and January 1987 Supplement).

Haw. 398, 520 P.2d 758, 764 (1974)). After considering the competing policies involved and the sparse precedent in this Commonwealth, we hold that the individual defendants owed no duty to Moore when they treated and furloughed Huett. As a general rule, Correction personnel who participate in the statutorily authorized furlough of an inmate owe no duty to specific members of the public at large. However, where the personnel know that the inmate possesses dangerous propensities and that the inmate is likely to cause a particular harm to a specific person, they are bound to exercise reasonable care in making a decision.

The pleadings and discovery material in this case disclose no allegation or indication that the individual defendants knew or even had reason to know of Moore's existence. The closest allegation of such knowledge was that Moore was "prepared to testify" against Huett at the prior criminal prosecution. Furthermore, it cannot be said that Huett was so dangerous as to be likely to harm every member of the public he contacted while on furlough. Hence, at the time they participated in the furlough decision, the individual defendants could not possibly have known it would result in particular harm to Moore. We conclude that the law does not entitle Moore to protection. *Sinn.*

Moore alternatively contends that a duty exists under Restatement (Second) of Torts §§315 and 319 (1965). Section 315(a) imposes a duty to control a third person's conduct so as to prevent harm to another where there is a special relationship between the defendant and the third person who harms another. Section 315(b) imposes the same duty where there is a special relationship between the defendant and the plaintiff. Section 319 is a special application of Section 315 and imposes a duty to control a third person who is under the charge of a defendant and who possessed known dangerous propensities.

As we have said, no special relationship exists between the defendants and Moore and thus Section 315(b) cannot form a basis for imposing a duty. Likewise, Section 315(a) and 319 do not change our conclusion, based on policy consideration, that these defendant prison counsellors, acting individually within the confines of their job responsibilities, were under no duty to determine whether Huett's alleged mental condition would cause him to harm Moore.[13] Based upon this, and our considerations of the policies served by the statutorily authorized furlough program, we hold that Sections 315(a) and 319 do not impose a duty upon the defendants to Moore.

Moore also contends that a duty existed because the defendants' participation in the furlough decision constituted an affirmative act which in itself created a corresponding duty of care owing to Moore. Moore cites Restatement (Second) of Torts §302 as supporting this proposition. We disagree.

Section 302 does not in itself create a duty. Rather, it defines what acts may constitute negligence, assuming that a duty is independently established. *See Rich v. United States Lines, Inc.,* 596 F.2d 541 (3d Cir. 1979).

---

[13] In *Gill,* we cited Section 319 to support our conclusion that a person assaulted by a state mental hospital patient could recover damages under the common law against the hospital and its physicians for their alleged negligence in releasing and supervising the patient. However, a hospital's decision to release a mental patient does not implicate the same policy considerations as are involved in the temporary home furlough of an inmate pursuant to a legislatively authorized program. A mental patient and its doctors are especially capable and indeed may well be obliged to determine whether a patient's *mental* instability may cause him to harm himself or others if released. *Vattimo,* 502 Pa. at 258, 465 A.2d at 1240 (NIX, J., concurring and dissenting opinion) (relied upon in *Gill*).

### CONCLUSION

We affirm the judgments in favor of the Commonwealth and Superintendent Cuyler on the grounds of immunity. Also, we affirm judgment in favor of the individual defendants Reid, Dillman and Zelles on the ground that they owed no duty to Moore.

### ORDER

The order of the Philadelphia County Common Pleas Court, per GOLDMAN, J., dated August 8, 1985, at Nos. 4480 and 4481 November Terms 1981 and No. 377 December Term 1980, is affirmed.

Judge COLINS dissents with respect to No. 86 T.D. 1985.

---

CONCURRING OPINION BY JUDGE PALLADINO:

This excellent majority opinion reaches a result in which I fully concur, but I am constrained to write a concurring opinion because of my concern with the majority's attempt to distinguish *Allentown State Hospital v. Gill*, 88 Pa. Commonwealth Ct. 331, 488 A.2d 1211 (1985). The effort to distinguish it reaffirms this court's decision in *Gill,* and with that I cannot agree. I believe the holding in *Gill* has been effectively reversed by recent decisions of our Supreme Court.

In *Gill,* the plaintiff brought suit against a state mental hospital and three of its doctors for injuries she incurred as the result of an assault by Arthur Metzer, a former patient of the hospital. Ms. Gill filed a complaint in trespass alleging the hospital and doctors had negligently released and supervised Mr. Metzer. The hospital and doctors raised sovereign immunity as an affirmative defense, and then sought judgment on the pleadings, asserting that immunity barred the suit.

We affirmed the common pleas court's denial of judgment on the pleadings, holding that sovereign im-

munity had been statutorily waived by 42 Pa. C. S. §8522(b)(2). We quoted the following language from section 8522:

Section 8522 provides as follows:

Liability Imposed—The General Assembly, pursuant to Section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

. . . .

(b) Acts which may impose liability—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(2) Medical-professional liability.—Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

Based on this language, the *Gill* court concluded that the legislature had waived the immunity of the sovereign in cases where the acts of a third party caused the harm complained of.

When faced with the same issue, although with a different exception, in *Mascaro v. Youth Study Center,*

89 Pa. Commonwealth Ct. 388, 492 A.2d 786 (1985), *rev'd*, 514 Pa. 351, 523 A.2d 1118 (1987), this court relied on *Gill* for the proposition that the General Assembly intended the real property exception "to waive immunity in all cases where the agency's negligent care, custody and control of real property resulted in injuries to others for which damages are recoverable under the common law." 89 Pa. Commonwealth Ct. at 395, 492 A.2d at 789.

This court then went on to state:

The recent case of Allentown State Hospital v. Gill, 88 Pa. Commonwealth Ct. 331, 488 A.2d 1211 (1985), in which a suit was brought by third persons injured by a mental patient, who the plaintiffs alleged had been negligently released from custody by Commonwealth health employees and agencies, is consistent with our present holding. The Commonwealth defendants contended that 42 Pa.C.S. §8522(b)(2), waiving the Commonwealth's sovereign immunity as a bar to actions for damages arising out of negligent acts of Commonwealth health care employees or institutions, was intended to confer the right to recover damages only upon direct consumers of the services of Commonwealth health care employees and institutions. We held in Gill that the legislature, having limited the waiver to damages recoverable at common law intended to extend the right to recover to all persons, including the plaintiffs in this case, whose damages would be recoverable under the common law. As we have earlier noted, the Act under consideration in the instant case similarly limits and, in so limiting, extends its waiver to all cases where damages are recoverable at common law.

*Id.*, 492 A.2d at 789-90.

The Supreme Court reversed. In reversing, the court highlighted the language of 42 Pa. C. S. §8541 as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof *or any other person.*

514 Pa. at 361, 523 A.2d at 1123. After noting that exceptions must be narrowly interpreted, the court went on to state: "Acts of *others* . . . are specifically excluded in the general immunity section (42 Pa. C. S. §8541), and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees." 514 Pa. at 362, 523 A.2d at 1124 (emphasis in original). The Supreme Court reinforced this holding in *Chevalier v. City of Philadelphia*, 516 Pa. 316, 319, 532 A.2d 411, 413 (1987), wherein the court stated:

> In Mascaro, we held that the Tort Claims Act, specifically 42 Pa. C. S. §8541, clearly precludes the imposition of liability on the Commonwealth or its local agencies for the acts of third parties, and the Legislature has not seen fit to waive immunity for such actors or their acts in any of the eight exceptions.
>
> Since Appellee's injuries were caused by the criminal acts of a third party, the City is insulated from all liability for the harm caused by such a party.

Because of the clarity of these Supreme Court mandates, I object to an attempt to distinguish *Gill.* The majority makes a distinction based on fine points of causation. Although the *Mascaro* Supreme Court decision does contain some discussion of intervening and super-

seding causes, I believe that this discussion is dicta. The holdings of *Mascaro* and *Chevalier* are clear, and it cannot be reasonably argued that *Gill* correctly states the law of Pennsylvania.

Accordingly, I would recognize that *Gill* is no longer a precedent in this Commonwealth, and make clear that a complaint based on *Gill* cannot survive Supreme Court review.

Judge CRAIG joins in this concurring opinion.