## McKay v. Roto-Rooter

C.P. of Lawrence County, No. 10346 of 2012

*Daniel S. Soom,* for plaintiff.
*Miles A. Kirshner,* for defendant.

COX, *J.*, September 24, 2013—Before the court for disposition is the motion for summary judgment filed on behalf of the defendant Roto-Rooter, which argues that the plaintiff has failed to produce evidence that the defendant had a duty to the plaintiff and, if so, the defendant's employee breached that duty owed to the plaintiff by unplugging the plaintiff's sump pump and instructing her to plug it in when the ground thawed. Moreover, the defendant contends that there was no causal connection between the actions of the defendant's employee and the damage that resulted to the plaintiff's basement.

The plaintiff resides at 1410 Chapin Road, New Castle, Lawrence County, Pennsylvania, where she also has a pole building to conduct her business known as Starbound Entertainment, which provides large character balloons for parades. On April 28, 2000, the plaintiff hired B-Dry Company to install French drains in her basement to ensure that it would remain dry. B-Dry installed three sump pumps in the basement, which means they replaced the existing pump and installed two more. In the fall of 2010, the plaintiff contacted Roto-Rooter for service because there was an odor being emitted from her basement. Roto-Rooter sent Devin Mayhue on the service call to the plaintiff's residence. He made visits to the plaintiff's residence on November 15 and 16, 2010, and returned on December 9, 2010, to install a drainosaurus. According to the plaintiff, on the first visit, Mr. Mayhue discovered and removed a towel that was stuck in one of the sump pumps. The plainitff also recalled that Mr. Mayhue inspected the rest of the drainage system in the basement and he installed a new sump pump because the existing unit was burned out due to the towel being

lodged in the sump pit. Conversely, Mr. Mayhue does not recall removing a towel from the sump pit. He stated that he removed the sump pump, was able to repair and reinstall the same. Mr. Mayhue provided the plaintiff with instructions on how to operate the drainage system, in which he informed her that the outlet pipe was frozen and the plaintiff should leave the sump pump unplugged until the ground thawed in the spring because the sump pit was full of water and it would activate the pump causing it to run constantly. The plaintiff informed Mr. Mayhue that she would be travelling to North Carolina to participate in a diet program at Duke University for 60 or 63 days from January 25, 2011, until April 6, 2011[1]. Mr. Mayhue then unplugged the sump pump and informed her to leave it that way until the ground thaws. Mr. Mayhue was concerned that the sump pump would be activated and it would not be able to drain the water because of the frozen outlet pipe. That would cause the pump to constantly run and burn out. Mr. Mayhue left the sump pump unplugged and the plaintiff later went to North Carolina. No one checked on the interior of the residence while the Plaintiff was away. When she returned on April 6, 2011, there were 17 inches of water in her basement[2].

The plaintiff filed suit claiming that the defendant was negligent by failing to properly train its employees, failing to properly advise customers on how to operate the pumps they install and by advising the plaintiff to leave the sump pump unplugged until the ground thawed in

1. The period of time from January 25, 2011 to April 6, 2011 is actually 71 days.
2. It must be noted that there are no allegations of water trouble in the basement from November 16, 2010, until January 25, 2011, when the plaintiff departed for North Carolina.

the spring of 2011. On June 5, 2013, the defendant filed a motion for summary judgment, which argues that the plaintiff has failed to produce evidence that the defendant owed the plaintiff a duty and the defendant's employee breached any duty owed to the plaintiff by unplugging the plaintiff's sump pump and instructing her to plug it in when the ground thawed. Additionally, the defendant contends that there was no causal connection between the actions of the defendant's employee and the damage that resulted to the plaintiff's basement.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2.

Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-651 (Pa. Super. 1999)). The moving

party bears the burden of proving the non-existence of any genuine issue of material fact. *Id.* A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Shincor Silicones, Inc.,* 756 A.2d 697 (Pa. Super. 2000). The non-moving party must adduce sufficient evidence on issues essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ertel v. Patriot-News Company,* 544 Pa. 93, 674 A.2d 1038 (1996), *reargument denied,* (1996), *certiorari denied,* 519 U.S. 1008 (1996).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 752 A.2d 339 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n.,* 555 Pa. 149, 153, 723 A.2d 174, 175 (1999). Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Basile v. H&R Block,* 761 A.2d 1115 (Pa. Super. 2001). If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be

granted. *Dudley v. USX Corporation*, 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa. Super. 2001).

The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore*, 152 Pa. Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the Court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

In order to establish a claim for negligence, a plaintiff must prove the following elements: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1126 (Pa. Super. 2004) (citing *Burman v. Golay & Co., Inc.*, 420 Pa. Super. 209, 616 A.2d 657 (1992)). In a negligence action, the plaintiff must prove that the defendant owed the plaintiff a duty of care and that duty was breached. *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 655 (Pa. Super. 2002) (citing *Ney v. Axelrod*, 723 A.2d 719, 721 (Pa. Super. 1999)). The court must examine whether the defendant has an obligation for the benefit of that particular plaintiff and if that does not exist or had not been breached, there can

be no cause of action for negligence. *Minnich v. Yost*, 817 A.2d 538, 541 (Pa. Super. 2003) (quoting *J.E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 582, 584 (Pa. Super. 1997)). A plaintiff's negligence claim is legally insufficient if he or she fails to state facts upon which the law imposes a duty upon the defendant in favor of that plaintiff. *Boyce v. U.S. Steel Corp.*, 446 Pa. 226, 230, 285 A.2d 459, 461 (1971) (citing *Yania v. Bigan*, 397 Pa. 316, 155 A.2d 343 (1959); *Neyman v. Soutter*, 205 Pa. Super. 8, 205 A.2d 685 (1964)). The existence of a duty is based upon a question of fairness, an inquiry which involves weighing the relationship of the parties, the nature of the risk and the public interest. *Campo v. St. Luke's Hosp.*, 755 A.2d 20, 24 (Pa. Super. 2000) (quoting *Brandjord v. Hopper*, 455 Pa. Super. 426, 429-431, 688 A.2d 721, 723 (1997)).

The plaintiff also bears the burden to demonstrate that the defendant caused the harm alleged in the complaint. Under Pennsylvania law, a plaintiff must establish that the defendant's action was a substantial factor in bringing about the harm incurred. *Mahon v. W.C.A.B. (Expert Window Cleaning and State Workers' Insurance Fund)*, 835 A.2d 420, 428 (Pa. Cmwlth. 2003) (citing *Smith v. Philadelphia Transportation Co.*, 202 Pa. Super. 278, 195 A.2d 168, 170 (1963)). "Two or more causes may contribute to and thus be the legal or proximate cause of an injury. To determine if an intervening force is a superseding cause, 'the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable.'" *Feeney v. Disston Manor Personal Care Home, Inc.*, 849 A.2d 590, 595 (Pa. Super. 2004) (quoting *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619, 623 (1995)). "In determining

whether a factual cause is a legal cause, the jury must consider many elements, including intervening natural events, the passage of time, intervening actors, and the conduct of the injured party." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 494 (3d Cir. 1985). It is important to note that determining causation is an issue for the jury to decide, unless the evidence is such that reasonable people cannot disagree. *Kirschner v. K & L Gates LLP*, 46 A.3d 737, 754 (Pa. Super. 2012) (citing *Curran v. Stradley, Ronon, Stevens & Young*, 361 Pa. Super. 17, 521 A.2d 451, 455 (1987)).

Expert testimony is employed to aid jurors in understanding issues and evidence that are beyond the scope of the average juror's normal realm of experience. *Young v. Com., Dept. of Transp.*, 560 Pa. 373, 376, 744 A.2d 1276, 1278 (2000). "If all primary facts can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation, then there is no need for the testimony of an expert." *Reardon v. Meehan*, 424 Pa. 460, 465, 227 A.2d 667, 670 (1967) (citing *Salem v. United States Lines Co.*, 370 U.S. 31, 82 S.Ct. 1119, 8 L. Ed. 2d 313 (1962)). "The employment of testimony of an expert rises from necessity, a necessity born of the fact that the subject matter of the inquiry is one involving special skills and training beyond the ken of the ordinary layman." *Id.* (citing *Weisman v. Sauder Chevrolet Co.*, 402 Pa. 272, 167 A.2d 308 (1961); *Jemison v. Pfeifer*, 397 Pa. 81, 152 A.2d 697 (1959); *Delair v. McAdoo*, 324 Pa. 392, 188 A. 181 (1936)). Expert testimony is proper where the expert witness does not intrude upon the province of the jury and

it is a field where only special knowledge and training would allow a person to reach a sound conclusion. *Id.*, 424 Pa. at 466, 227 A.2d at 660. In *Carpenter v. Pleasant*, 759 A.2d 411 (Pa. Cmwlth. 2000), the court determined that it was necessary to have an expert testify regarding the operation of mechanical devices that monitors traffic lights to avoid double green situations as it was a subject area that required specialized skill, training, knowledge and experience to help educate the jury as to whether the implementation of that device could have prevented the accident in question.

In the case *sub judice*, the defendant owed the plaintiff a duty as it is in the business of repairing and installing drainage systems similar to the one located in the plaintiff's basement. The plaintiff employed the defendant to repair her drainage system as there was a foul odor emitted from her basement. The defendant sent Devin Mayhue to diagnose the problem and make any necessary repairs, which he attempted to do by repairing the sump pump that was not operating correctly. However, upon repairing the sump pump, he did not plug it in due to a frozen outlet pipe and informed the plaintiff to keep it unplugged until the ground thawed. It is apparent that the defendant had a duty to properly repair the plaintiff's drainage system as that was the task it was hired to perform.

The plaintiff contends that Roto-Rooter breached its duty because its employee, Mr. Mayhue, installed a new sump pump but left the same unplugged with the instructions to plug it in when the ground thaws. Mr. Mayhue insisted that the outlet pipe was frozen and water in the sump pit would cause the sump pump to run constantly, which could burn out the unit. As a result, the plaintiff left the sump pump

unplugged for the duration of her lengthy trip to North Carolina. The plaintiff failed to ask someone to check her house or plug in the sump pump when the weather warmed and the ground thawed, even though Mr. Mayhue instructed her to plug in the pump during the spring-time. While she was in North Carolina, the ground thawed and 17 inches of water accumulated in the plaintiff's basement. The plaintiff contends that Mr. Mayhue provided her with incorrect information regarding the necessity of leaving the sump pump unplugged until the ground thawed. However, the plaintiff failed to provide any expert testimony to substantiate that claim. The operation of a sump pump and the necessity of leaving this particular sump pump unplugged until the ground thawed is a mechanical issue that is highly technical and beyond the scope of knowledge and experience of a lay person. Whether the sump pump would have run constantly causing a risk of fire or if the sump pump should have remained plugged in and would have operated correctly cannot be decided based upon lay testimony. It is necessary to provide expert testimony to explain how a sump pump operates and the proper use of a sump pump when the outlet pipe is constructed near the surface of the ground and is frozen. In fact, the plaintiff testified, in her deposition, that she did not realize there may have been a problem with the instructions provided to her by Mr. Mayhue until she spoke with an acquaintance, who worked in construction. He informed her that the water in her basement was caused by the sump pump not being plugged in when the ground thawed. Clearly, she needed to be informed by someone with more knowledge on the subject than herself to reach the conclusion that Mr. Mayhue and the defendant were negligent. Similarly, a jury would need the same information provided by an

expert witness to aid in their determination. The only testimony provided to this court regarding the propriety of unplugging the sump pump by someone with knowledge of how drainage systems operate was supplied by Mr. Mayhue, who stated that it was proper to unplug the sump pump until the ground thawed. Therefore, the plaintiff has failed to provide adequate testimony to create a question of fact as to whether Roto-Rooter had a duty to act differently by plugging in the sump pump Mr. Mayhue repaired in the plaintiff's basement.

In regards to the issue of causation, the court is not required to address that issue at the current time because it has determined that the plaintiff has failed to demonstrate that the defendant breached a duty it owed to the plaintiff.

For the reasons set forth in this opinion, the defendant's motion for summary judgment is granted.

## ORDER OF COURT

Now this 24th day of September, 2013, this case being before the court on August 26, 2013, for oral argument on the motion for summary judgment filed by the defendant, with both parties appearing through their counsel, the plaintiff Toni McKay, represented through counsel, Daniel S. Soom, Esquire and the defendant Roto Rooter, represented through counsel, Miles A. Kirshner, Esquire and after a consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. The motion for summary judgment filed by the

defendant is hereby granted.

2. The prothonotary of Lawrence County is directed to enter summary judgment in favor of the defendant Roto Rooter and against the plaintiff Toni McKay.

3. The complaint filed by the plaintiff is hereby dismissed.

4. The prothonotary is directed to serve a copy of this order of court upon counsel of record, Daniel S. Soom, Esquire and Miles A. Kirshner, Esquire.

