Charles Vattimo and Doris Vattimo, his wife, on their own behalf and Doris Vattimo, as Guardian ad litem for James Thomas Vattimo, an incompetent, Petitioners *v.* Lower Bucks Hospital Inc., Respondent.

Argued October 10, 1980, before Judges ROGERS, MACPHAIL and PALLADINO, sitting as a panel of three. Reargued March 3, 1981, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and PALLADINO.

*William E. Fairall, Jr., Jackson, Sullivan & Beckert,* for petitioners.

*Fredric D. Rubin,* with him *Alan Dion, Durben & Hains,* and *T. Sidney Cadwallader, Cadwallader, Darlington & Clarke,* for respondent.

OPINION BY JUDGE ROGERS, April 24, 1981:

Charles and Doris Vattimo (appellants) appeal from an order of the Administrator for Arbitration Panels for Health Care (Administrator) which sustained Lower Bucks Hospital's (hospital) demurrer to the appellants' complaint filed pursuant to the Health Care Services Malpractice Act.[1]

The factual allegations of the complaint are as follows:

During the night of August 14, 1976, the appellants summoned the Bristol Township police for assistance with their son James who was behaving in a bizarre manner, including the exhibition of an abnormal fascination with fire. Accompanied by police officers, the appellants took James to the Lower Bucks Hospital where he was diagnosed as paranoid schizophrenic, sedated, admitted to the psychiatric ward and placed in a room with another patient. The appellants stayed with their son until he appeared to be asleep and then returned home. Several hours later, having somehow obtained matches or other incendiary ma-

---

[1] Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §1301.101 *et seq.* The basis of our jurisdiction in appeals from decisions of the Administrator is set forth in *Knight v. Annon,* 38 Pa. Commonwealth Ct. 1, 391 A.2d 1101 (1978).

terials, James set fire to his hospital room. The other occupant died as a result of injuries sustained in the fire. James escaped without physical injury.

Thereafter James was questioned by fire marshals and police, was involuntarily committed to a psychiatric hospital for fourteen months during which period he lost his employment, was charged with felony murder and incarcerated in the Bucks County Prison for two months and, we have been informed by counsel, was tried and found not guilty of all charges by reason of insanity.

It is further averred that although hospital employees had diagnosed James as a paranoid schizophrenic and had been warned of his psychotic fascination with fire they negligently failed to provide him with adequate care and supervision making it possible for him to obtain the materials necessary to start the fatal fire.

The Administrator, relying exclusively on authorities limiting recovery for the negligent infliction of emotional distress,[2] sustained the hospital's preliminary objection in the nature of a demurrer and held that "the Complaint fails to claim damages on behalf of any of the Plaintiffs which are recoverable under Pennsylvania Law. . . ." We reverse.

In order to succeed in their action, the appellants must allege and prove that the hospital owed a duty to James, negligently failed to carry out that duty, and that this negligence proximately caused the damages of which they now complain. *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978). The hospital does not attack the sufficiency of the complaint with respect to the averments of a duty

---

[2] *See e.g. Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970); (establishing the "zone of danger" limitation); *Knaub v. Gotwalt,* 422 Pa. 267, 220 A.2d 646 (1966) ("impact rule").

owed to James or the breach of that duty. The hospital presents only the issue of whether the appellants have adequately pleaded the existence of compensable damages proximately caused by the hospital's alleged negligence.

In this regard several general propositions must be borne in mind. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of deciding whether preliminary objections in the nature of a demurrer should be sustained. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960). Questions of proximate causation, except in those cases where the facts are undisputed and the remoteness of the causal connection between defendant's negligence and plaintiff's injury clearly appears from those facts, are for the jury. *Hamil v. Bashline, supra; Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *Kite v. Jones,* 389 Pa. 339, 132 A.2d 683 (1957); *Deluca v. Manchester Laundry and Dry Cleaning Company, Inc.,* 380 Pa. 484, 112 A.2d 372 (1955). Restatement (Second) Torts §434, W. Prosser, Law of Torts §45, at 290 (4th ed. 1971).

Damages allegedly resulting from the hospital's negligence are divided into two counts. In their own right appellants seek recovery for mental or emotional distress and for the expenses incurred in providing James with psychiatric treatment and criminal defense counsel. As James' guardian, Doris Vattimo

seeks recovery for injuries sustained to James' "mental, physical and emotional being . . ." including his loss of employment and decrease in earning capacity, legal and medical expenses, and emotional distress resulting from the criminal prosecution and involuntary detention in the psychiatric hospital and prison. These items of damage will be considered seriatim.

The Administrator correctly indicated that considerations of policy limit recovery for damages due to mental or emotional distress. We agree with the Administrator that the mental distress of Charles and Doris Vattimo, who were not present at the hospital during the fire and who were informed by telephone of the accident by hospital employees, is outside the range of those injuries which the hospital should have reasonably foreseen and for which, therefore, it should be held liable. The most significant recent pronouncement of our Supreme Court on the issue of bystander recovery for negligently inflicted emotional distress, while leaving the outermost boundaries of allowable recovery uncharted, nevertheless suggests the circumscription of the area of liability to plaintiffs at the scene of the accident whose mental or emotional distress resulted from observing the accident (as opposed to learning of it from others). *Sinn v. Burd,* 486 Pa. 146, 169-172, 404 A.2d 672, 684-685 (1979). Charles and Doris Vattimo were neither at the scene of their son's "accident" nor did they witness it.

The appellants also seek to recover medical and legal expenses incurred on behalf of their son. No authority or reason has been offered why, as a matter of law, such damages cannot be had. As James' parents, appellants may well be required to provide him with necessary medical care.[3] If expenditures for this

---

[3] The existence of this obligation will depend on the facts as they are revealed at trial. James' age, domicile, the date of the

purpose were necessitated by the hospital's tortious conduct then indemnification may be sought from the tortfeasor. *Macleay v. Beckwith Machinery Company,* 131 Pa. Superior Ct. 338, 200 A. 124 (1938). Similarly, although no authority on this precise issue has been discovered, if appellants were compelled to act in protection of James' interests by defending him against criminal prosecution then reasonable expenditures for that purpose are proper items of damage. As was stated in *Aetna Casualty and Surety Company v. Nationwide Mutual Insurance Company,* 471 F. Supp. 1059, 1067 (M.D. Pa. 1979) the rule in this Commonwealth is that

> [w]here the wrongful acts of the Defendant have involved the Plaintiff in litigation with others or placed him in such relations with others as to make it necessary to incur costs and expenses to protect his interests, such costs and expenditures should be treated as legal consequences of the original wrongful act.

*See also Seaboard Surety Company v. Permacrete Construction Corporation,* 221 F.2d 366 (3d Cir. 1955); *Ortho v. Consumers' Gas Company,* 280 Pa. 118, 124 A. 296 (1924).

The emotional distress allegedly suffered by James as a direct victim of the hospital's negligence stands on a different footing from that of his parents. Appellants urge that the hospital, having negligently made it possible for James to set his room on fire, should have foreseen the probability of emotional as

onset of his symptoms, the public or private nature of the psychiatric hospital to which he was committed all may be relevant to this issue. *See Gaydos v. Domabyl,* 301 Pa. 523, 152 A.2d 549 (1931); *Commonwealth ex rel. Welsh v. Welsh,* 222 Pa. Superior Ct. 585, 296 A.2d 891 (1972). *See also* the Act of June 1, 1915, P.L. 661, Section 3, *as amended,* 71 P.S. §1783. The pleadings are not clear as to these facts and the hospital did not raise this issue in its preliminary objections.

well as physical harm resulting to him. If emotional harm to James in fact resulted then, it is argued, the fortuitous avoidance of physical harm will not foreclose the question of the hospital's liability. We agree and note in this regard that "[t]he defendant need not foresee 'that an injury should occur *in the exact way* and to the same extent as that which did occur,' he need only foresee that some injury of a like general character is not unlikely to result from failure to use care." *Thornton v. Weaber,* 380 Pa. 590, 595, 112 A.2d 344 (1955) (emphasis in the original) (quoting Jeremiah Smith in Legal Cause in Actions of Tort, "Selected Essays on the Law of Torts" 649, 690). Other damages allegedly suffered by James include a loss of employment and decrease in earning capacity. At this early stage of the proceedings it is not so clear as to preclude rational dispute that the causal connection between these damages and the hospital's alleged negligence is too remote to permit recovery. The question is properly one of fact for the jury. *Hamil v. Bashline, supra; Clevenstein v. Rizzuto, supra.*

Finally, the hospital argues that even if James' injuries were foreseeable it is insulated from liability for those injuries by James' own intervening actions in starting the fire. The question of superseding or intervening cause like that of causation in general is ordinarily for the fact-finding tribunal. *Leposki v. Railway Express Agency, Inc.,* 297 F.2d 849 (3d Cir. 1962). *Deluca v. Manchester Laundry and Dry Cleaning Company, Inc., supra; Evanuik v. University of Pittsburgh,* 234 Pa. Superior Ct. 287, 338 A.2d 636 (1975). In the usual case "[j]ustice would seem to dictate that the parties should be given an opportunity to present the necessary . . . evidence if obtainable, and the issue be then submitted to the jury under proper instructions." *Kline v. Moyer & Albert,* 325 Pa. 357, 365, 191 A. 43, 47 (1937).

Moreover, by the clear weight of authority a hospital is required to exercise reasonable care under the circumstances to restrain, supervise and protect mentally deficient patients and such patients may recover for self-inflicted injuries caused by the hospital's breach of this duty. *See e.g. Skar v. City of Lincoln, Nebraska,* 599 F.2d 253 (8th Cir. 1979); *Castillo v. United States,* 552 F.2d 1385 (10th Cir. 1977); *Abille v. United States,* 482 F. Supp. 703, 705 (N.D. Cal. 1980) (cases collected); *Comiskey v. State,* 71 App. Div. 2d 699, 418 N.Y.S. 2d 233 (1979); *Meier v. Ross General Hospital,* 71 Cal. Rptr. 903, 69 C.2d 420, 445 P.2d 519 (1968). *See also* Annot., 60 A.L.R. 3d 880 (1974).

In *Smith v. United States,* 437 F. Supp. 1004 (E.D. Pa. 1977), *modified* 587 F.2d 1013 (1978), the wife and children of a mental patient who escaped from the Coatesville Veterans Hospital and committed suicide successfully recovered damages from the hospital for negligent failure to supervise their decedent. Noting that patients diagnosed as paranoid schizophrenic present particular danger to themselves and others, the court wrote:

The question simply stated is, does a psychiatric hospital have a duty to prevent the escape or acquisition of dangerous devices by its suicidal patients, and having breached that duty is the hospital liable for damages its patients cause either to themselves or to others?

*Id.* at 1009. Citing the leading case of *Dinnerstein v. United States,* 486 F.2d 34, 36-37 (2d Cir. 1973) the court held that "if [the] suicide was reasonably foreseeable, the hospital staff was clearly negligent in assigning [the patient] to an unsupervised and unrestricted room. . . ." *Id.* This result follows from the principle that even where an intervening act is wrongful it does not become a superseding cause unless,

looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable. *Griggs v. Firestone Tire and Rubber Company,* 513 F.2d 851, 862 (8th Cir. 1975); *Ross v. Vereb,* 481 Pa. 446, 392 A.2d 1376 (1978); *Bleman v. Gold,* 431 Pa. 348, 246 A.2d 376 (1968); *Mautino v. Piercedale Supply Company,* 338 Pa. 435, 13 A.2d 51 (1940). Restatement (Second) of Torts §447.

In this case the asserted superseding cause—James' actions in starting the fire—is the very harm against which it is alleged the hospital had a duty to guard. Assuming that the hospital's negligence can be established by the evidence, it cannot be argued that the precise hazard contemplated by that negligence is a superseding cause of the eventual harm.

> [T]he law is not so unaware of reality that it will permit a tortfeasor to turn his wrongful act into an immunity by asserting that the eventual damage resulted from a more immediate cause when it is clear that this immediate cause was put into operation by his own tortious conduct.

*Thornton v. Weaber, supra,* 380 Pa. at 595, 112 A.2d at 347. *See also Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957). Cf. Restatement (Second), Torts §449:

> Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent

> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

Accordingly we will enter the following

ORDER

AND Now, this 24th day of April, 1981, the order of the Administrator for Arbitration Panels for Health Care, sustaining the preliminary objections of the appellee Lower Bucks Hospital and dismissing the complaint of Charles and Doris Vattimo, is hereby reversed and the record is remanded for further proceedings consistent with this opinion.

Judges WILKINSON and PALLADINO dissent.

This decision was reached prior to the expiration of the term of office of Judge WILKINSON.