590 A.2d 53

**Deborah A. BUSCHMAN, Appellant,**

**v.**

**Ann Marie DRUCK and Department
of Transportation, Appellees.**

**Ann Marie DRUCK and William S. Druck, Appellants,**

**v.**

**Deborah A. BUSCHMAN and Pennsylvania Department
of Transportation, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1990.

Decided April 15, 1991.

Lawrence S. Markowitz, Markowitz & Markowitz, P.C., York, for appellant/appellee, Deborah A. Buschman.

James A. Nettleton, Jr., with him, Bishop Nichlas Kauffman, Law Offices of Dale E. Anstine, P.C., York, for appellees/appellants, Ann Marie Druck and William S. Druck.

James J. Dodd-o, Deputy Atty. Gen., with him, Mark E. Garber, Jr., Chief Deputy Atty. Gen., and Ernest D. Preate, Jr., Atty. Gen., Harrisburg, for appellee, Com. of Pa., Dept. of Transp.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, PELLEGRINI, KELLEY and BYER, JJ.

PALLADINO, Judge.

Ann Marie Druck (Druck), William S. Druck, and Deborah A. Buschman (Buschman) (collectively Appellants) appeal from an order of the Court of Common Pleas of York County (trial court) granting partial summary judgment in favor of the Department of Transportation (DOT).[1]

This action stems from an automobile accident which occurred on January 25, 1985. On that date, Buschman was operating her vehicle in a northerly direction on a state highway in Lower Windsor Township, York County, and Druck was operating her vehicle in a southerly direction on

---

1. While the above-captioned matters have not been consolidated in this court, they had been consolidated for trial before the trial court, and raise identical issues. Accordingly, the two cases will be treated as one matter, and all the issues raised in both cases will be addressed in one opinion.

the same highway, when the two vehicles collided. The drivers sued each other and DOT, claiming that the negligence of the other driver, together with the negligence of DOT caused the injuries sustained. Each driver alleged that DOT was negligent in failing to place curve warning and speed advisory signs at the curve where the accident occurred.

Immediately prior to trial, all parties agreed that Appellants could only establish a claim of joint and several liability against DOT, and that a verdict of sole liability against DOT would not be possible. As a result of this agreement, DOT filed a motion for summary judgment based upon this court's decision in *Crowell v. City of Philadelphia,* 131 Pa.Commonwealth Ct. 418, 570 A.2d 626 (1990). DOT argues that *Crowell* prohibits an action against a commonwealth party, when only joint and/or several liability for negligence can be proven. The trial court, holding that *Crowell* applied, granted DOT's motion. This appeal followed.

On appeal, Appellants raise two issues: (1) whether the trial court erred in applying *Crowell* to the facts in this case so as to bar recovery against the commonwealth; and (2) whether *Crowell* should be overruled because it misconstrues applicable precedent and is contrary to this commonwealth's comparative negligence statute.[2]

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. No. 1035(b). Our scope of review of a trial court's grant of summary judgment is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Herman v. Greene County Fair Board,* 112 Pa.Commonwealth Ct. 615, 535 A.2d 1251 (1988).

2. 42 Pa.C.S. § 7102.

Appellants argue that *Crowell* should not bar the action against DOT, because *Crowell* interprets the immunity provisions applicable to local agencies, not the section applicable to commonwealth parties. However, both the Pennsylvania Supreme Court and this court have recognized the similarity between the governmental and sovereign immunity provisions, and have relied upon cases in one area, when confronted with a similar problem in the other. *See Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989); *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987); *Chambers v. Southeastern Pennsylvania Transportation Authority*, 128 Pa.Commonwealth Ct. 368, 563 A.2d 603 (1989). Accordingly, we conclude, that the reasoning in *Crowell* is equally applicable to cases arising under either the governmental immunity or sovereign immunity provisions.

We must now turn to the question of whether *Crowell* should be overruled, as the Appellants alternatively argue. In *Crowell*, the plaintiffs brought a wrongful death and negligence action against a drunk driver, Harry B. Lewis (Lewis), who crossed over a median divider at a turn in the road on the Schuylkill expressway and struck plaintiffs' vehicle. Just before the curve where the accident occurred, a traffic directional sign, erected by the City of Philadelphia (City), warned drivers that the road ahead curved to the left. In fact, the road curved to the right. A jury trial resulted in a verdict for the plaintiffs, with the jury attributing eighty percent of the liability to Lewis, and the remaining twenty percent to the City. The City filed a post-trial motion, requesting judgment notwithstanding the verdict on the theory that the claims against the City were barred by 42 Pa.C.S. § 8541.[3] A panel of this court, relying upon the Pennsylvania Supreme Court's opinion in *Mascaro*

---

**3.** This section reads as follows:

**§ 8541. Governmental immunity generally**

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

*v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), and this court's opinions in *Gallagher v. Bureau of Correction,* 118 Pa.Commonwealth Ct. 516, 545 A.2d 981 (1988) and *Moore v. Department of Justice,* 114 Pa.Commonwealth Ct. 56, 538 A.2d 111 (1988), held that section 8542(b)(4)[4] required that "the dangerous condition of the traffic directional sign, standing alone ..." *Crowell,* 131 Pa.Commonwealth Ct. at 425–426, 570 A.2d at 630, had to cause the injury before the City could be liable. The court then made the following observation:

We do observe that this decision effectively eradicates joint tortfeasor liability on the part of a local agency under Section 8542(b)(4). We are hard-pressed to think of a situation involving the *concurrent* negligence of a local agency where it cannot be said that the agency's negligence merely facilitated the harm caused. Indeed, if the rationale of this case is applied to other governmental immunity exceptions, including those pertaining to the Commonwealth, the joint tortfeasor liability of any governmental unit will be difficult to establish under any exception. See, e.g. Gallagher.

Further, although this is the first opinion to identify the virtual impossibility of proving the liability of a local agency where the local agency's negligence is concurrent with that of another tortfeasor, we believe we are simply

4. This section reads as follows:

§ 8542. **Exceptions to governmental immunity**

....

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

....

(4) *Trees, traffic controls and street lighting.*— A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

stating what is implicit in the Supreme Court's *Mascaro* opinion.

*Id.,* 131 Pa.Commonwealth Ct. at 426–427, 570 A.2d at 631 (emphasis in original).

After a thorough review of *Crowell,* and the cases cited therein, we conclude that the panel in *Crowell* erred when it suggested that joint tortfeasor liability was no longer available against a governmental unit. The panel was correct, however, in holding that the City was not liable to the Crowells, not because the City could not be a joint tortfeasor, but because the criminal conduct of Lewis, i.e. driving while under the influence, was a superseding cause which absolved the City of any liability. *See Mascaro; Moore.*

*Gallagher,* relied upon by the panel in *Crowell* for the proposition that the actions of the third party need not be criminal to prohibit liability being placed upon the governmental unit, is also distinguishable. In *Gallagher* an inmate at the State Correctional Institution at Rockview (SCIR) filed suit against the commonwealth alleging a defect in commonwealth property after his left ring finger was severed when his cellmate closed the cell door. At the time the inmate was using the door to climb down from the upper bunk in the cell. This court held that the commonwealth was not liable because the cell door was not defective for the purpose for which it was designed, but was being used for a purpose not intended, i.e. a ladder.

In the matter now before this court, there is no allegation that any of the other defendants were engaged in criminal conduct, which would be a superseding cause as in *Mascaro* and *Moore.* Nor was the highway being used for some activity other than its intended purpose. We conclude that it was not the legislative intent to bar joint liability in the circumstances of this case. Accordingly, we overrule *Crowell* in so far as it holds that a governmental unit can never be jointly liable with a non-governmental unit, and affirm in all other respects.

Having concluded that *Crowell* does not preclude a governmental unit from being jointly liable, we reverse the

decision of the trial court, and remand this matter for proceedings consistent with this opinion.

## ORDER

AND NOW, April 15, 1991, the order of the Court of Common Pleas of York County in the above-captioned matters is reversed. The above-captioned matters are remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

DOYLE, Judge, concurring.

I concur with the determination of the plurality opinion authored by Judge Palladino that *Crowell v. City of Philadelphia*, 131 Pa.Commonwealth Ct. 418, 570 A.2d 626, *petition for allowance of appeal granted*, 525 Pa. 550, 582 A.2d 1311 (1990), should be overruled to the extent expressed in that opinion, that is, that the *Crowell* court erred when it suggested that joint tort-feasor liability was no longer available against a government agency. Further, I join Judge Byer in his sage explanation that *Crowell* should be overruled in its entirety.

I write separately, however, to explicate why I cannot further agree with Judge Byer that *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), must be limited to the real property exception to governmental immunity [1] (see Byer concurring opinion, p. 60). Directly contrary to this view is the Supreme Court's decision in *Chevalier v. City of Philadelphia*, 516 Pa. 316, 532 A.2d 411 (1987), a case where the plaintiff was mugged (a criminal act) in a City of Philadelphia parking lot and the pertinent exception was not the (b)(3) real estate exception, but the (b)(4) dangerous lighting condition exception (trees, traffic controls and street lighting).[2] Mr. Justice Papadakos wrote:

1. Section 8542(b)(3) of the Judicial Code, 42 Pa.C.S. § 8542(b)(3).

2. *See* Section 8542(b)(4) of the Judicial Code, 42 Pa.C.S. § 8542(b)(4), which provides an exception to governmental immunity when there is

Under such a factual allegation, judgment on the pleadings is properly granted, but not for the reasons ascribed by the trial judge [lack of knowledge that a dangerous condition existed]. . . . The City's Motion for Judgment on the Pleadings is properly granted because the harm caused by third persons may not be imputed to a local agency or its employees. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987); *see also Johnson v. SEPTA*, 516 Pa. 312, 532 A.2d 409 (1987).

In *Mascaro*, we held that the Tort Claims Act, specifically 42 Pa.C.S. § 8541, clearly precludes the imposition of liability on the Commonwealth or its local agencies for the acts of third parties, and the Legislature has not seen fit to waive immunity for such actors or their acts in *any of the eight* exceptions.

Since Appellee's injuries were caused by the criminal acts of a third party, the City is insulated from *all* liability for the harm caused by such a party.

Amendment to the complaint, under these circumstances, would be futile since no cause of action exists against the City for the injuries Mr. Chevalier sustained at the hands of his unknown attacker.

*Chevalier*, 516 Pa. at 319, 532 A.2d at 413 (emphasis in original).

What I glean from reading *Mascaro* and *Chevalier in pari materia* is that the Supreme Court has held that there are some criminal acts that, by their very nature, are so severe and savage that their visitation upon innocent, or even negligent, third parties could not have been anticipated by the governmental agency and they are, therefore, by judicial fiat, a superseding intervening cause. *See* Restatement (Second) of Torts § 448.[3] This principle is nothing

"[a] dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency. . . ."

3. Section 448 of the Restatement (Second) of Torts (1965) provides:
The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which

more than a slight expansion of, or more precisely, a greater restriction upon, the well-settled principle of common law that even an intentional tort or criminal act may be within the foreseeable likelihood of the actor's negligent conduct, which of course could be in this case a governmental agency. Section 449 of the Restatement (Second) of Torts (1965) pertinently provides:

> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

For an excellent discussion and application of this principle in a case where the acts of the third party amounted to arson which resulted in a death and criminal charges of felony murder, see *Vattimo v. Lower Bucks Hospital, Inc.*[4] 59 Pa.Commonwealth Ct. 1, 428 A.2d 765 (1981), *aff'd in part, rev'd in part,* 502 Pa. 241, 465 A.2d 1231 (1983); *see also Goryeb v. Department of Public Welfare,* 525 Pa. 70, 575 A.2d 545 (1990) (act of criminal homicide can form the basis upon which liability is placed upon the Commonwealth by specific statutory provisions under the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. §§ 7101–7503).

In the case immediately before this Court, there were no allegations that any of the parties were engaged in that

afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

4. I note also the full discussion and explanation by Mr. Justice Flaherty in the opinion announcing the judgment of the Court in *Vattimo* of the distinction between the concepts of "primary" and "secondary" liability on the one hand (quoting with approval, *Builders Supply Co. v. McCabe,* 366 Pa. 322, 325–328, 77 A.2d 368, 370–71 (1951)), and the terms "intervening" and "superseding" cause on the other hand, *Vattimo,* 502 Pa. at 253 n. 4, 465 A.2d at 1237 n. 4. On this basis I decline to follow Judge Byer's reasoning in his concurring opinion regarding these concepts. *See* Byer, concurring opinion, p. 198 n. 12.

type of criminal conduct that our Supreme Court in *Masca-ro* and *Chevalier* determined, in effect, was a superseding intervening cause.[5] Here, as in *Crowell,* the tortious or criminal conduct of the third parties would at best be violations of the Vehicle Code [6] and would not be within the penumbra of that type of criminal act found in *Mascaro* and *Chevalier. See also Moore v. Department of Justice,* 114 Pa.Commonwealth Ct. 56, 538 A.2d 111 (1988), *petition for allowance of appeal granted,* 520 Pa. 610, 553 A.2d 971 (1988), *appeal dismissed as improvidently granted,* 523 Pa. 418, 567 A.2d 1040 (1990) (sovereign immunity under the (b)(1) exception for medical-professional liability was the issue where the act of the third party was criminal homicide); *Herman v. Greene County Fair Board,* 112 Pa.Commonwealth Ct. 615, 535 A.2d 1251 (1988) (acts of the third parties were *not* criminal, but only negligent, in allowing a team of draft horses to break away and run into the crowd watching a "horse pull" sponsored by the Greene County Fair Board; the exception was (b)(8) regarding the care,

5. I can discern no reason to apply this type of criminal activity differently in cases involving *sovereign immunity, see Moore v. Department of Justice,* 114 Pa.Commonwealth Ct. 56, 538 A.2d 111 (1988), *petition for allowance of appeal granted,* 520 Pa. 610, 553 A.2d 971 (1988), *appeal dismissed as improvidently granted,* 523 Pa. 418, 567 A.2d 1040 (1990), and cases involving *governmental immunity, Mascaro.* Compare, however, the language of the Supreme Court in *Snyder v. Harmon,* 522 Pa. 424, 434, 562 A.2d 307, 312 (1989) ("Finally, we have found the real estate exception to the rule of [sovereign] immunity ... can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes injury, not merely when it facilitates injury by acts of others, whose acts are outside of the Political Subdivision Tort Claims Act's scope of liability, *see Mascaro....*"), with that in *Chevalier,* 516 Pa. at 319, 532 A.2d at 413, dealing with the street lighting exception, ("In *Mascaro* we held that the Tort Claims Act, specifically, 42 Pa.C.S. § 8541, clearly precludes the imposition of liability on the Commonwealth *or* its local agencies for the acts of third parties ..."). *But cf. Goryeb v. Department of Public Welfare,* 525 Pa. 70, 79 n. 18, 575 A.2d 545, 549 n. 18 (1990) ("Since we have determined this case on other grounds, we need not decide if acts of others are to be treated the same under the Sovereign Immunity Act as the Political Subdivision Tort Claims Act.").

6. 75 Pa.C.S. §§ 101–8105.

custody, or control of animals).[7]

Finally, despite the language of Mr. Justice Papadakos in *Chevalier* that "harm caused by third persons may not be *imputed* to a local agency or its employees" (emphasis added), and in *Mascaro* that "the Legislature has clearly precluded the imposition of liability on itself or its local agencies *for* acts of third parties...." and "it would be incongruous, indeed, to shield the City or Center from liability *for* the crimes of its agents and employees, but impose liability *for* the crimes of others" (emphasis added), it seems clear that what was meant was not the application of the common law principles of vicarious liability, which are not at issue in these matters, but rather the negligence of the agencies themselves and *the extent to which the General Assembly meant to protect those agencies* through the doctrines of sovereign immunity and governmental immunity. The Supreme Court has at no time pronounced that such "crimes" as driving under the influence of alcohol, or driving up a one-way street, for example, are such acts that would shield from liability the sovereign's *own* negligence; *e.g.,* posting two one-way street signs facing one another at opposite ends of the same street or, failure to repair a malfunctioning traffic light that, through negligence, shows green in all four directions, or, as in *Crowell,* placing a sign indicating a curve in the wrong direction. That phrase in Section 8541 of the Judicial Code, 42 Pa.C.S. § 8541, dealing with governmental immunity which provides that no local agency shall be liable for damages on account of an injury caused by any act "of the local agency or an employee thereof *or any other person,"* except as provided therein, is not found in the Code provisions dealing with sovereign immunity, 42 Pa.C.S. §§ 8521–8528, and must be viewed as addressing only considerations of vicarious liability. I further note for guidance the language in *Moore,* distinguishing *Allentown State Hospital v. Gill,* 88 Pa.Commonwealth Ct. 331, 488 A.2d 1211 (1985):

---

7. I take this opportunity to note my disagreement with the holding in this opinion.

However, that case [Gill] is distinguishable because the mental patient's harmful acts could not be regarded as having *superseded* the hospital's *own* original negligence in releasing the mental patient. A cause is not considered superseding when it is a foreseeable or normal incident of the risk created by the original actor's negligence. *Vattimo* ...; Restatement (Second) of Torts § 448 (1965). *Moore,* 114 Pa.Commonwealth Ct. at 61, 538 A.2d at 114 (emphasis in original).

PELLEGRINI, J., joins in this concurring opinion.

KELLEY, Judge, concurring.

I agree with overruling of *Crowell*'s prohibition of governmental joint liability, not because of the reasoning of the plurality, but because I envision the factual possibility of joint liability by governmental instrumentalities.

I must also align with the one proposition of the dissent by Judge McGinley construing *Mascaro* as requiring the "artificial condition or defect of the land *itself* ..." caused the injury under the real estate exception.

With this reasoning, I would reverse and remand for the jury to determine the governmental liability, if any (jointly or severally), in accordance with the properly admissible evidence.

BYER, Judge, concurring.

I agree that *Crowell v. City of Philadelphia,* 131 Pa.Commonwealth Ct. 418, 570 A.2d 626, *appeal granted,* 525 Pa. 550, 582 A.2d 1311 (1990), should be overruled to the extent it construes statutes governing sovereign immunity [1] and governmental immunity [2] as precluding liability on the part of a Commonwealth party or local agency whenever such a party is a joint tortfeasor. I do not join in the opinion by Judge Palladino announcing the judgment of the court but concur in the result, because I cannot agree

1. 42 Pa.C.S. §§ 8521–8522.
2. 42 Pa.C.S. §§ 8541–8542.

with the rationale and because I would overrule *Crowell* in its entirety.

I respectfully believe it is incorrect to characterize the drunk driver in *Crowell* as a superseding cause and to imply that criminal conduct is always a superseding cause. It is hornbook law that criminal conduct which brings about harm within the risk created or increased by the negligence of another does not constitute a superseding cause, relieving the other of liability, unless the criminal conduct is both of an intentional nature and not within the scope of the risk created by the other. *See O'Malley v. Laurel Line Bus Co.*, 311 Pa. 251, 166 A. 868 (1933); *Vattimo v. Lower Bucks Hospital Inc.*, 59 Pa.Commonwealth Ct. 1, 9–10, 428 A.2d 765, 769 (1981), *aff'd in part, rev'd in part*, 502 Pa. 241, 465 A.2d 1231 (1983); *Restatement (Second) of Torts* § 442B and comments b and c; Keeton, Dobbs, Keeton and Owen, *Prosser and Keeton on The Law of Torts*, §§ 33, 44 (5th ed. 1984).[3]

Under the facts in *Crowell*, the drunk driver did not intentionally cause the accident, and it certainly was foreseeable by the city that a drunk driver or speeder, having been misdirected by the incorrect traffic sign, would crash into another car.[4] It is for this reason that the jury in *Crowell* correctly returned a verdict on the basis of joint

---

**3.** In *Vattimo,* the opinion of our court by Judge Rogers correctly observed, "even where an intervening act is wrongful it does not become a superseding cause unless, looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable." 59 Pa.Commonwealth Ct. at 9–10, 428 A.2d at 769. None of the six separate opinions in the Supreme Court in *Vattimo* expressed disagreement with this statement, and the opinion of Mr. Justice Flaherty announcing the judgment of the court expressly agrees with this statement. The criminal conduct in *Vattimo* was much more egregious than that in *Crowell.*

**4.** Actually, it was foreseeable that any driver who obeyed this sign would have a collision. The important issue for a superseding cause analysis is that there is nothing so extraordinary about a drunk driver or speeder having such a collision that it would be unforeseeable and thus outside the scope of the original risk. The fact that the conduct also violated criminal statutes is beside the point under the facts in *Crowell.*

and several liability.[5] Therefore, the attempt to save the result in *Crowell* by reasoning that a superseding cause relieved the city of liability is contrary both to the facts in *Crowell* and the common law of torts.[6]

I believe that *Crowell* should be overruled because it represents what I respectfully believe to be this court's incorrect approach in both reading too literally and out of context certain language of our Supreme Court in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), and in applying that language to immunity exceptions other than the real property exception involved in *Mascaro*.

In *Mascaro*, the Supreme Court considered a case where the plaintiffs were attempting to use the real property exception to governmental immunity [7] as basis to subject a local agency to liability for harm which occurred outside the real property and which was caused by the intentional criminal conduct of third parties.[8] The plaintiff's theory of

---

5. This follows logically from the jury's determination that the city's negligence in *Crowell* was a substantial contributing factor in causing the harm.

6. The logical extension of the rationale that *Crowell* involved a superseding cause is that any tortfeasor whose conduct also violates a criminal statute, including every moving violation under the Vehicle Code, would be a superseding cause. I respectfully suggest that such a position is untenable.

7. 42 Pa.C.S. § 8542(b)(3).

8. I believe *Mascaro*, unlike *Crowell*, did involve a superseding cause and could have been decided on that basis. However, the only justice who urged that result in *Mascaro* was Mr. Justice Hutchinson, who joined the opinion of the court but also filed a concurring opinion on this point. 514 Pa. at 364, 523 A.2d at 1125.

   Therefore, it appears that the Supreme Court tacitly rejected the notion that *Mascaro* should be decided on the basis of a superseding cause analysis. That is why I cannot join in Judge Doyle's conclusion that the Supreme Court in *Mascaro* and *Chevalier* "determined, in effect, [that the criminal conduct] was a superseding intervening cause." Doyle, J., concurring opinion, at 191. If we were writing on a clean slate, I would have no difficulty in joining Judge Doyle's excellent opinion analyzing these cases on the basis of superseding cause. However, our Supreme Court has tacitly declined to follow that analysis. Although I would not mind at all if the Supreme Court would switch to a superseding cause analysis in this type of case, I believe we must engage in an analysis which is consistent with what the Supreme Court actually did in *Mascaro*.

liability was that the third parties had escaped from a detention center operated by the local agency, and that this escape was facilitated by the local agency's negligent maintenance of the "real estate."

The Supreme Court's opinion by Mr. Justice Papadakos described the precise issue to be decided as "the extent of the real estate exception to local agency immunity, and whether it bars an action against the City and Center under these facts." 514 Pa. at 355, 523 A.2d at 1120. In analyzing this issue, the Supreme Court concluded that the immunity statute was not intended to subject an otherwise immune governmental defendant to the broad spectrum of liability imposed on private landowners, who could be liable "for failing to take precautions against unreasonable risks that stem directly and indirectly from the property including the contemplated acts of third parties, whose crimes are facilitated by the condition of the property." *Id.*, 514 Pa. at 360, 523 A.2d at 1122.

*Mascaro* expressly agreed with decisions of this court holding that to impose liability under real estate exception of the immunity statutes: the conduct or negligent act in question must be directly related to the condition of the property; the liability cannot be premised on an imputed negligence theory; and the negligence of the governmental defendant must arise to something more than a failure to supervise the conduct of others. *Id.*, 514 Pa. at 361–62, 523 A.2d at 1123–24.

The opinion of the court then summarized these principles as follows:

the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

*Id.*, 514 Pa. at 363, 523 A.2d at 1124 (emphasis in original).

It is improper to read this quoted language out of context, which I believe we have done in *Crowell* and other

cases. *See Bartell v. Straub*, 134 Pa.Commonwealth Ct. 43, 578 A.2d 72 (1990); *Gallagher v. Commonwealth, Bureau of Correction*, 118 Pa.Commonwealth Ct. 516, 545 A.2d 981 (1988) (en banc); and *McCloskey v. Abington School District*, 115 Pa.Commonwealth Ct. 289, 539 A.2d 946 (1988) (en banc). Read in context of the opinion as a whole, the above-quoted language merely is a shorthand expression of the preceding principles expressed in the opinion.

In other words, this language should not be read literally and out of context to preclude liability in all circumstances where the harm occurs as a result of the concurrent negligence of another, including the causal negligence of the victim.[9] I cannot believe that the Supreme Court intended by this language to reach the radical result of abolishing for governmental defendants the common law principles of concurrent causes and joint and several liability or the statutory rules of comparative negligence [10] and contribution among joint tortfeasors.[11]

Instead, read in context of the entire opinion, I believe that this language in *Mascaro* was intended to express the principles that for liability to attach under the real property exception, there must be a direct nexus between the injury

9. For example, *McCloskey* held that *Mascaro* precluded recovery by a teenager who was rendered a quadraplegic when he fell from gymnastics rings, because he contributed to his own harm. This approach effectively abrogates the comparative negligence statute, 42 Pa.C.S. § 7102, in actions involving governmental tortfeasors. I see no justification for allowing the determination of a plaintiff's causal negligence to intrude upon and confuse the analysis of whether the case falls within an exception to immunity. If a plaintiff's causal negligence is to preclude recovery in a tort action subject to 42 Pa.C.S. § 7102, it must be because the plaintiff's causal negligence exceeds that of the defendant[s], not because the plaintiff's causal negligence takes the case outside an exception to immunity. The result of such an analysis is to reinstate the legislatively rejected common law rule of contributory negligence in cases involving governmental defendants. If contributory negligence is to replace the legislature's mandate to use comparative negligence in these cases, it must be the General Assembly and not the judiciary which decides to do so.

10. 42 Pa.C.S. § 7102.

11. 42 Pa.C.S. § 8324.

and the condition of the real property and that the negligence of the governmental defendant must be such as would create a primary rather than only a secondary liability.[12]

Furthermore, I believe it is improper to apply this limitation under the real property exception to all other exceptions under the immunity statutes. In *Crowell*, we applied this limitation to the trees, traffic controls and street lighting exception.[13] I believe it was error to do so.

To begin with, the General Assembly specifically provided in the real property exception that the term "real property" was intended to exclude "trees, traffic signs, lights and other traffic controls...." 42 Pa.C.S. § 8542(b)(3)(i). To me, this indicates a legislative recognition that different principles are applicable to these two exceptions.

More importantly, *Crowell* reached an incorrect result by requiring the plaintiffs "to prove that the dangerous condition of the traffic directional sign *itself* caused the [plain-

---

**12.** In *Builders Supply Co. v. McCabe*, 366 Pa. 322, 325–26, 77 A.2d 368, 370 (1951), the Supreme Court noted that "[t]he difference between primary and secondary liability is not based on a difference in *degrees* of negligence or any doctrine of *comparative* negligence.... It depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person." (emphasis in original). The Supreme Court further pertinently observed, "secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." *Id.,* 366 Pa. at 328, 77 A.2d at 368.

Although the concepts of primary and secondary liability generally have been used to determine whether there is an obligation of indemnity between tortfeasors, I find these concepts to be useful in connection with the real estate exception and consistent with the principles expressed in *Mascaro*. However, this analysis might be imperfect, because a governmental defendant's liability almost always will be on the basis of imputed negligence of its servants under the *respondeat superior* doctrine. Therefore, for this limited purpose only, I would not consider a governmental defendant's tort liability to be secondary *merely* because the liability is imposed under the *respondeat superior* doctrine.

**13.** 42 Pa.C.S. § 8542(b)(4).

tiffs'] injuries and not merely that the dangerous condition of the traffic directional sign facilitated the injury by the acts of [the drunk driver] whose acts are outside the scope of liability contained in Section 8542(b)(4)." 131 Pa.Commonwealth Ct. at 425, 570 A.2d at 630 (emphasis in original). I cannot think of a situation where an incorrect traffic directional sign could "itself" cause an injury without the concurrent acts of a driver or pedestrian. Surely, when the General Assembly waived immunity with respect to traffic signs, it did not intend to waive immunity only in cases where the traffic sign "itself" leaps into the road and hits someone.

If the General Assembly had intended to amend the comparative negligence and contribution statutes to make them inapplicable to governmental tortfeasors and to abrogate the common law principles of concurrent causes and joint and several liability, I believe the General Assembly would have done so expressly. I cannot discern from the language of the statutes governing sovereign or governmental immunity any legislative intent to create such a radical change in the law of torts. I think it is beyond our proper role to engage in such legislation on our own, and I cannot believe the Supreme Court intended such a result in *Mascaro*.

For these reasons, I believe that the approach reflected in *Crowell* is erroneous and based upon a misinterpretation of the obvious intent of the Supreme Court in *Mascaro*. I am heartened that on November 7, 1990, the Supreme Court granted allocatur in *Crowell*, "limited to the issue of the interpretation of 42 Pa.C.S. § 8542(b)(4) in light of our decision in *Mascaro* ...." 525 Pa. 550, 582 A.2d 1311. This will give the Supreme Court a much needed opportunity to clarify the proper approach to these questions, which to date have been characterized by both confusion and, in my opinion, injustice.

McGINLEY, Judge, dissenting.

I respectfully dissent.

The majority would reverse our decision in *Crowell v. City of Philadelphia*, 131 Pa.Commonwealth Ct. 418, 570 A.2d 626 (1990) insofar as it holds that a government unit can never be held jointly liable with a non-governmental unit. I believe our decision in *Crowell* was correctly based on the Supreme Court's decision in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) (that a defect in the land *itself* must cause the injury and not merely facilitate the injury by the acts of others); to reverse *Crowell* would effectively misapply *Mascaro*.

The plurality states that in *Mascaro* the court reasoned that the criminal conduct of a third party constituted a superseding cause. Plurality Opinion at 56. I disagree. More accurately, the court in *Mascaro* held "that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* caused the injury, not merely when it facilitates the injury by the acts of others...." (Emphasis in original.) *Mascaro*, 514 Pa. at 363, 523 A.2d at 1124. The *Mascaro* court did not differentiate between the criminal and non-criminal conduct of third parties.[1] Accordingly, I would not overrule *Crowell* and would affirm the trial court.

---

**1.** In *Crowell* we noted that had the Supreme Court decided *Mascaro* on the grounds that the criminal conduct of a third party acted as an intervening cause, *Crowell* could be distinguished because "there is no conduct on the part of Lewis which permits us to conclude that Lewis' conduct was an intervening cause of the injuries sustained by the Crowells...." 131 Pa.Commonwealth Ct. at 427, 570 A.2d at 631. In *Crowell*, we further noted: "Since the Supreme Court rejected an intervening cause analysis in *Mascaro*, we believe we are precluded from utilizing such an analysis to distinguish the present case from *Mascaro*. *Id.*