# Reid v. School District of Philadelphia

*Jerome Gamburg,* for plaintiff.
*Elena Yandola* and *Robert T. Lear,* for defendant.

KLEIN, *J.,* July 16, 1991—This case involves the interpretation of the "real property" exception in the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8542(b)(3). Carl Reid, then 8 years old, fractured and dislocated his little finger when a door at the Samuel B. Huey Elementary School closed on it. The door had been propped open with a wedge to allow easier access to the students and Reid was injured while climbing to retrieve a ball stuck on top of the door.

The issue is somewhat cloudy following *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), and the other opinions in its wake. However, reading all the cases, there is enough evidence for the instant case to go to a jury. A jury could reasonably hold that a heavy exterior door on a school that cannot be kept open without a make-shift wedge is "defective real estate." The jury could find there was a design defect because of the risk created by a heavy door with no mechanism to

keep it open. The jury could find there is a risk for accidents just like this one.

## FACTS

Carl Reid, then 8 years old, was playing wall ball in the schoolyard of the Samuel B. Huey Elementary School during the lunch recess, a common practice of the children. The ball got caught between the partially opened door and a ledge above the door to the building.

The door was a heavy exterior door that was kept open with a wooden wedge. There was no mechanism to keep the door open otherwise. The door was propped open during recess because it was heavy to open and keeping it open made it easier for the students to go in and out of the building. Otherwise, there was nothing "wrong" with the door.

Reid climbed up on a railing near the door, balancing himself with his right hand on the door while reaching for the ball. It was at this point that the wedge came out, the door closed, and the injury occurred.

## LEGAL ISSUES

Since it is agreed that the door did not malfunction in any way, the issue becomes whether or not this is akin to a "design defect" in real estate to come within the exceptions of the Tort Claims Act. While there may have been negligence on the part of the staff in either propping open the door or supervising the children, this is not one of the covered exceptions and there can be no recovery under either of these theories. See *McCloskey v. Abington School Dist.*, 115 Pa. Commw. 289, 539 A.2d 946 (1988) and cases cited therein.

The particular section of the Tort Claims Act involving the "real property" exception to governmental immunity found at 42 Pa.C.S. §8542(b)(3):

"(3) *Real property*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . ."

Reid contends that the door was defective in its design because there was no mechanism to safely keep the door open. For example, there could have been a hook on the wall and a bracket on the door in which to secure the hook. Reid maintains that the door is part of the real estate, it should have been anticipated that a heavy door in a school would have to be kept open to allow easy access before and after recess, and that a school that does not have a door that will stay open is defective in design.

The school district claims that the door worked well, it was misused by Reid, and under the case of *Gallagher v. Bureau of Correction,* 118 Pa. Commw. 516, 545 A.2d 981 (1988), this does not fall within the real property exception. Gallagher was a prisoner. The only way he could get up to his upper bunk bed was to use the door to the cell as a ladder. In one climb, his cell-mate closed the door on his finger. The *Gallagher* court held that the cell door was not "defective" since it was being used for a purpose not intended and the real property exception did not apply.

Although the issue is close, this court believes that *Gallagher* is in conflict with other Superior Court cases, that the rationale of *Gallagher* has been undercut by recent cases and that *Gallagher* can be distinguished. The better view is that a door is part of the real estate and if not properly designed for the

intended use, there should be no municipal immunity. Accordingly, the motion for summary judgment is denied.

Although *Gallagher* holds that the use of the cell door as a ladder does not come under real estate exception to municipal immunity, there are cases that hold that the local agency cannot take advantage of immunity. In fact, the cases holding that an injury *was* caused by defective real estate seem to involve defective real estate *less* than *Gallagher*, which holds that a cell door is not subject to the real estate exception.

In *Singer v. School Dist. of Philadelphia*, 99 Pa. Commw. 553, 513 A.2d 1108 (1986), the Commonwealth Court reversed a judgment on the pleadings for the school district based on immunity. David Singer was on a vaulting horse in gym class, missed the mat, and landed on the hardwood floor, breaking his elbow. The court held that it was a fact for the jury as to whether proper gym floor matting was a safety element of a gymnasium floor. It seems to this judge that a hardwood gym floor is not defective if satisfactory for basketball and other sports played on a wood floor and that the mats used for gym events or wrestling are not part of the "real estate." However, the "mats as real estate" theory was adopted again by the Commonwealth Court in *Cestari v. School Dist. of Cheltenham Twp.*, 103 Pa. Commw. 274, 520 A.2d 110 (1987). This involved pole vaulting in a gym and the court said there was an issue as to whether the pole vault unit was permanently affixed to the district's property.

The questions involving the real estate exception to the Tort Claims Act have been muddied by the conflicting opinions in the wake of *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). In *Mascaro*, the Supreme Court held that the

Tort Claims Act exceptions must be read narrowly. A juvenile named Claude Opher escaped from the Youth Study Center and later burglarized, beat and raped members of the Mascaro family, ultimately leading to the father's suicide. The Mascaros sued the city, claiming that the "real estate" of the Youth Study Center was "defective," facilitating the escape, and therefore leading to the later unlawful acts of Opher. The holding of *Mascaro* has not been controversial. However, further difficulties have arisen because the court *rejected* the view that the acts of Opher were a "superseding cause," a position stated in Justice Hutchinson's concurring opinion. Instead, the majority said that the exception applies only when the "defect of the land *itself* causes the injury, not merely when it facilities the injury by the acts of others, whose acts are outside the statute's scope of liability."

The initial line of cases following *Mascaro* essentially held that *Mascaro* eradicated joint tortfeasor liability on the part of a local agency. If *anyone* was at all liable with the agency, no matter what percentage, the agency was entitled to immunity. The key case holding this view was *Crowell v. City of Philadelphia,* 131 Pa. Commw. 418, 570 A.2d 626 (1990). In *Crowell,* a drunk driver got onto the Schuylkill Expressway going the wrong way, partly because a directional sign indicated the road ahead curved left when in fact it curved right. The jury held the city 20 percent negligent, but the Commonwealth Court reversed, based on *Mascaro.*

The latest opinion from the Commonwealth Court is a seven-judge panel opinion in *Buschman v. Druck,* 139 Pa. Commw. 182, 590 A.2d 53 (1991), *Crowell,* and held that the criminal act of the driver, Lewis, was a superseding cause which absolved the city of liability. It is noted that there were three

separate concurring opinions and a dissent in *Busch-man*. Perhaps more will be known, as the Supreme Court will hear argument on *Crowell.* *

The effect of these cases can be seen in the checkered history of the case of *McCloskey v. Abington School Dist.* Robert McCloskey Jr., then 16 years old, tragically fell from a set of gymnastic rings during a gym class and became a quadriplegic. Initially, the Commonwealth Court reversed a lower court summary judgment and held that whether the rings were "real estate" was a matter for the fact finder. 101 Pa. Commw. 110, 515 A.2d 642 (1986). The Supreme Court reversed per curiam, Justice Larsen dissenting, for reconsideration in light of *Mascaro.* 517 Pa. 347, 537 A.2d 329 (1988). Before either *Crowell* or *Buschman,* the Commonwealth Court reversed itself and sustained the summary judgment motion, citing *Mascaro* for the principal that McCloskey himself was at least partially at fault and the real estate exception only applies when the "defect of the land *itself* causes the injuries, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability."

The question arises as to where we are now. What remains of *Gallagher* and *McCloskey* now that *Crowell* has been reversed by *Buschman?*

The *Buschman* court specifically considered *Gallagher* and distinguished it. Judge Palladino said:

"This court held that the Commonwealth was not liable because the cell door was not defective for the purpose for which it was designed, but was being

---

* Since the filing of this opinion, the Supreme Court reversed *Crowell,* ___ Pa. ___, 613 A.2d 1178 (1992). It held that *Mascaro* does not mean that a governmental entity cannot be jointly liable, only that a governmental entity cannot be held vicariously liable for the acts of another.

used for a purpose not intended, i.e. a ladder." 139 Pa. Commw. 187, 590 A.2d 53.

Perhaps one could say that there should be means to get to an upper bunk in a prison cell, probably through a ladder. It would be reasonable to consider the ladder personalty and not part of the real estate.

In any event, a door certainly is part of the school building. In this case, Reid was not actually climbing on the door but merely held it to secure the ball. A great many kinds of accidents might occur if a school door is so heavy it is difficult for small children to open. It might be reasonable to anticipate that a very heavy school door would have to be propped open to allow children to go in and out frequently during recess. A trier of fact could conclude that a heavy door with no mechanism to safely keep it open, when used on an elementary school building constitutes defectively designed real property. The trier of fact could also conclude that the door was being used ás intended, to allow access to the school building during recess. It also could be concluded that Reid was not "misusing" the door, since all he was doing was holding on to it as he climbed the rail to reach for the ledge.

In view of the amorphous and shifting nature of the law in this area, this decision is not made with the optimum level of certainty. However, it seems more likely than not that when looking at the recent cases, this is the kind of case the appellate courts will allow to go to a jury. It does seem that a jury should be allowed to conclude that it is a design defect to design a door to a school yard that is so heavy it needs to be propped open to facilitate the children going in and out, and then not to provide any means to safely keep the door open, such as a hook and bracket for the hook. For that reason, the motion for summary judgment is denied.

## ORDER

And now, July 16, 1991, upon consideration of the motion for summary judgment and response thereto, it is hereby ordered and decreed that the motion for summary judgment is denied.